**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1307**

LAKE RIDGE APARTMENTS, LLC,

        Plaintiff - Appellee,

    v.

BIR LAKERIDGE, LLC,

        Defendant - Appellant,

    and

BERKSHIRE INCOME REALTY-OP, L.P.,

        Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Raymond A. Jackson, District Judge. (4:07-cv-00008-RAJ-JEB)

Argued: May 14, 2009          Decided: July 1, 2009

Before SHEDD and DUNCAN, Circuit Judges, and Frederick P. STAMP, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** James Bradford McCullough, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland, for Appellant. Kristan Boyd Burch, KAUFMAN & CANOLES, PC, Norfolk, Virginia, for Appellee.

**ON BRIEF:** Genevieve J. Quarfoot, LERCH, EARLY & BREWER, CHARTERED, Bethesda, Maryland; Jonathan L. Hauser, TROUTMAN SANDERS LLP, Virginia Beach, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lake Ridge Apartments, LLC ("Lake Ridge") sued Berkshire Income Realty-OP, L.P. and BIR Lakeridge, LLC (collectively, "BIR") for breach of a contract for the purchase and development of a parcel of land. The district court granted Lake Ridge's summary judgment motion. After holding a bench trial on the issue of damages, the district court entered a judgment of $774,292 in favor of Lake Ridge. BIR now appeals the district court's grant of summary judgment and the award of damages. For the reasons that follow, we affirm.

I.

This case arises out of a contract between BIR and Lake Ridge for the sale of property, as well as an amendment to that contract known as the "Sixth Amendment." Under the contract, BIR would purchase an apartment complex from Lake Ridge, and Lake Ridge would build garages on the property for BIR. Under the Sixth Amendment, BIR agreed to purchase an additional parcel of land ("Parcel A-1") for $234,000. Lake Ridge would "use its best efforts to construct on Parcel A-1 an apartment building" of eighteen units. J.A. 24.

BIR agreed to pay $144,000 of the total cost for Parcel A-1 at the closing of the parties' general purchase and sale

3

agreement on July 1, 2005. The Sixth Amendment set out several factual scenarios governing BIR's obligation to pay the remaining $90,000 owed on the parcel. Each scenario was conditioned upon the further action of at least one of the parties. First, BIR could decide within 30 days of the parties' closing -- that is, by August 1, 2005 -- to develop Parcel A-1 itself. If it gave written notice to Lake Ridge before August 1, 2005, BIR could pay Lake Ridge the remaining $90,000 and Lake Ridge would "have no further rights or obligations with respect to Parcel A-1." J.A. 25. Second, if BIR did not opt to develop Parcel A-1 itself, Lake Ridge had one year to obtain the necessary building permits and approvals for the new eighteen-unit building to be constructed on the parcel. If Lake Ridge delivered the necessary permits before June 30, 2006, BIR would pay the remaining $90,000.[1] Third, if BIR did not develop the property itself and Lake Ridge could not deliver the necessary permits and approvals by June 30, 2006, BIR had two options: BIR could choose to require Lake Ridge to buy back Parcel A-1 for the original down-payment price of $144,000; or, BIR could choose to pay Lake Ridge $90,000 for Parcel A-1. If BIR did not

---

[1]If Lake Ridge subsequently delivered the finished building and a permanent certificate of occupancy for each of the eighteen units, Lake Ridge would receive an additional $1,926,000 under the Sixth Amendment.

4

provide notice of its decision between these two options by July 31, 2006, under the Sixth Amendment BIR would be "deemed to have elected" to pay Lake Ridge $90,000 for Parcel A-1. Id.

Lake Ridge contacted BIR several times in July and August 2005 to ascertain BIR's plans for Parcel A-1, and the parties exchanged e-mails on possibly altering the architectural plans for the new building to be constructed on it. BIR did not exercise its option to develop Parcel A-1 itself by the August 1, 2005 deadline. To the contrary, on October 13, 2005, BIR informed Lake Ridge that it "would like to proceed with the process of building the additional 18 units [on Parcel A-1]." J.A. 174.

In December, BIR decided that it would prefer for Lake Ridge to accept the $90,000 balance on Parcel A-1 but cancel construction of both the new apartment building and the garages. BIR informed Lake Ridge on December 23, 2005 that it was "considering holding off" the Parcel A-1 development and "considering delaying construction of the garages" -- both "until some undetermined point in the future." J.A. 211. As to the Parcel A-1 building, BIR asked, "[W]e will owe you a payout of +/- 90K if we elect not to build, correct?" Id.

Lake Ridge responded on January 5, 2006, confirming that $90,000 was due as to Parcel A-1, but stating that it would also

5

request expenses and lost profits as to the garages. Lake Ridge asked BIR to "let us know as soon as possible which way Berkshire will be proceeding on these two items." J.A. 211. On the same day, BIR informed Lake Ridge that it had decided to "hold[] off on proceeding" with both the Parcel A-1 project and the garage project "until some undetermined point in the future." Id. BIR promised to "initiate payment for the 90K" owed on Parcel A-1 and requested an itemization of Lake Ridge's costs for the garages. Id.

BIR began drafting a side letter agreement to memorialize its new intentions as to Parcel A-1 and the garages. On March 1, 2006, BIR sent Lake Ridge a proposed agreement under which BIR would pay Lake Ridge $90,000 and Lake Ridge "shall have no further rights or obligations with respect to Parcel A-1." J.A. 50. Three weeks later, Lake Ridge declined to sign the agreement. It also indicated that it had been mistaken about the $90,000 payment owed for the Parcel A-1 project. In addition to the $90,000 balance, Lake Ridge stated that it intended to seek out-of-pocket expenses and lost profits approximating $1.5 million because BIR had "committed to" the construction project. J.A. 225. BIR was unwilling to pay this amount, and the parties' communications subsequently deteriorated.

6

By the June 30, 2006 deadline, Lake Ridge had neither applied for nor delivered the specified building permits. Consequently, BIR attempted to exercise its option of paying Lake Ridge $90,000 for Parcel A-1. Lake Ridge returned the check and sued for breach of contract.

The district court granted summary judgment in favor of Lake Ridge, finding that BIR had anticipatorily breached the contract when it informed Lake Ridge in December 2005 and January 2006 that it wished to delay both construction projects for an undetermined period of time. The district court further found that Lake Ridge had been willing and able to perform its obligations under the contract and was entitled to damages. After holding a hearing, the district court awarded Lake Ridge $774,292 based on testimony from Lake Ridge corporate officers as to the construction costs associated with the projects and estimated lost profits.

BIR now appeals the district court's grant of summary judgment, certain evidentiary decisions, and the grant of damages. We address these claims in turn.

II.

We review a district court's grant of summary judgment de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir.

2007) (en banc) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc)).  We review a district court's evidentiary decisions for abuse of discretion. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 240 n.1 (4th Cir. 2009).  We review a district court's factual findings at a bench trial for clear error.  PCS Phosphate Co., Inc. v. Norfolk S. Corp., 559 F.3d 212, 217 (4th Cir. 2009).

### III.

BIR first argues that the district court erred in granting summary judgment in favor of Lake Ridge based on BIR's alleged anticipatory breach.  Relying on Virginia law, BIR argues that it did not engage in anticipatory breach because it did not repudiate the contract by unequivocally and unconditionally announcing its intention to abandon the agreement.  BIR contends that its statements in December 2005 and January 2006, indicating that it would delay developing Parcel A-1 for an undetermined period of time, did not amount to an unequivocal statement that BIR would refuse to perform under the agreement. Rather, BIR asserts that its overtures offering to pay $90,000 for Lake Ridge to "hold off" on the construction project were merely a "request to negotiate a cancellation of the construction provision."  Petr.'s Br. at 44 (emphasis omitted).

8

On a related note, BIR argues that Lake Ridge agreed to modify the original agreement and cancel the construction project for $90,000 in January 2006. BIR asserts that Lake Ridge ultimately reneged on this agreement three months later when it requested an additional $1.5 million in costs and lost profits. In addition, BIR argues that because Lake Ridge failed to deliver the necessary building permits before June 30, 2006, and because BIR provided a timely notice that it elected to pay Lake Ridge $90,000, BIR "has no additional payment obligations under the Agreement." Petr.'s Br. at 38.

Lake Ridge responds that BIR's course of conduct constituted anticipatory breach because neither the parties' purchase agreement nor the Sixth Amendment gave BIR "the right to simply hold off on proceeding with the Parcel A-1 Building until some undetermined point in the future." Respt.'s Br. at 27. Lake Ridge further points out that once it realized it had made a mistake and informed BIR that it intended to request its out-of-pocket expenses and lost profits related to Parcel A-1, BIR "never indicated that it had changed its mind on holding off on construction." Id. at 28. Instead, BIR confirmed with Lake Ridge that it was not interested in developing Parcel A-1 at that time. Lake Ridge argues that because BIR repudiated the parties' agreement, Lake Ridge was excused from further

9

performance under the contract, and in fact "properly mitigated its damages by stopping work" on the project.  Id. at 26.

The parties' purchase agreement states that it will "be governed by, and construed in accordance with the laws of the state in which the Property is located [Virginia], without regard to laws regarding choice of law."  J.A. 114.  The Virginia Supreme Court has held that "for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, [and] unequivocal, and must cover the entire performance of the contract."  Vahabzadeh v. Mooney, 399 S.E.2d 803, 805 (Va. 1991) (citations omitted).  We find that standard to be squarely met on these facts.  On January 5, 2006, BIR wrote to Lake Ridge:

> At this time we are holding off on proceeding with either of these projects until some undetermined point in the future.[]
>
> With respect to the building, we will initiate payment for the 90K[.]
>
> As for the garages, please provide me with an itemization of the out of pocket expenses for review[.]

J.A. 43.  The message, taken as a whole, is unambiguous.  The e-mail clearly states BIR's intent not to proceed with the construction projects.  This intent is further established by the fact that BIR promised to "initiate payment for the 90K"

10

owed on Parcel A-1 and invited Lake Ridge to submit an itemization of expenses related to the garages for review. In addition, BIR did not express any contrary intent between March and June, even after Lake Ridge stated that it would request out-of-pocket expenses and lost profits as to Parcel A-1 in addition to the garages. J.A. 341. BIR's January 5, 2006 e-mail to Lake Ridge, bolstered and confirmed by its subsequent course of conduct, constituted a clear, absolute, and unequivocal repudiation of the contract.

BIR's argument that the parties modified their purchase agreement is similarly unpersuasive. BIR contends that the parties modified their purchase agreement so that BIR could pay Lake Ridge $90,000 and cancel the building project even after the original August 1, 2005 deadline to do so had expired. Based on this allegedly modified agreement, BIR argues that Lake Ridge breached the contract by failing to timely deliver the necessary building permits.

The record does not support BIR's argument. The Virginia Supreme Court has acknowledged that contracting parties may "modify the terms of their contract by express mutual agreement," but there must be "clear, unequivocal and convincing evidence" of the parties' intent to modify the contract. Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 872–73

11

(Va. 1983). Even if Lake Ridge and BIR did begin to negotiate a modification of their purchase agreement, the record shows that the parties never formally agreed to such a modification. BIR attempted to memorialize this agreement in its proposed side letter, which it sent to Lake Ridge in February and March. J.A. 44-46, 49-52. However, Lake Ridge never signed the letter agreement.

Because BIR's January 5, 2006 e-mail constituted an anticipatory breach of the parties' contract, we affirm the district court's grant of summary judgment in favor of Lake Ridge.

IV.

BIR also challenges the district court's decision to admit testimony from David Rudiger and Everett Hoffman during the damages hearing. These two claims are addressed separately below.

A.

BIR asserts that the district court ordered Lake Ridge to proffer the testimony of its witnesses, but that Lake Ridge failed to do so properly. Citing Md. Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 783 (4th Cir. 1998), and other cases, BIR contends that a proffer must indicate what a witness is expected

12

to say, and that Lake Ridge did not provide this information. Petr.'s Br. at 55-56. BIR further contends that Everett Hoffman's testimony constituted expert testimony based on his industry-wide experience. BIR argues that the district court should have excluded Hoffman's testimony because Lake Ridge had indicated that it would offer only lay opinions.

BIR's assertions mischaracterize the record. Contrary to BIR's contentions, Lake Ridge provided a three-page proffer clearly detailing the testimony each of its three witnesses would give. With respect to Everett Hoffman specifically, Lake Ridge's proffer stated that he would testify about the costs of construction for the Parcel A-1 building and the garages and his method for determining these costs. This information was more than sufficient to give BIR notice of the substance of Hoffman's testimony. Moreover, the district court did not err in admitting Hoffman's testimony as a lay opinion. As the district court pointed out, "[t]here's no way under the sun that you can call any lay witness who will not have some experience external to the job he or she is working in." J.A. 460. Hoffman testified about his cost calculations for the Parcel A-1 project and based his rationale for these calculations on his previous experience in the industry. The district court did not abuse

13

its discretion in finding that his testimony did not constitute expert testimony under Rule 701.

B.

BIR's arguments as to David Rudiger are similarly unpersuasive. BIR contends that under Federal Rule of Evidence 701, the district court should not have admitted David Rudiger's testimony on Lake Ridge's ability to obtain the necessary building permits by June 30, 2006. BIR emphasizes that under Rule 701, a lay witness's testimony must be based on personal knowledge and perceptions. BIR highlights that Rudiger "did not testify to any personal experience with seeking or obtaining building permits, either in connection with this project or generally," or testify about his knowledge regarding the process for obtaining such permits in Virginia. Petr.'s Br. at 51. Because Lake Ridge did not lay a proper foundation for Rudiger's testimony, BIR argues that the district court should have excluded it.

BIR exaggerates the alleged deficiency in the foundation for Rudiger's lay witness testimony. Rudiger testified that Lake Ridge would have had to prepare architectural plans, perform test borings to determine the building's foundation requirements, draw up structural foundation plans and site plans, and get approval from Virginia Power because part of the

14

proposed parking lot for the building fell on a Virginia Power easement.  He stated that because Lake Ridge had "previously dealt with Virginia Power on the same site in getting their approval for the location of parking lots underneath of their easement . . . we didn't perceive any problem in that regard." J.A. 3924.  At trial, the district court overruled BIR's objection to Rudiger's testimony, noting that "if [Rudiger's] been involved in this project, he knows what is required to get a building permit."  Id. at 390.

The record shows that Rudiger testified in sufficient detail about the process for obtaining permits, and about his involvement in this and other similar construction projects, to lay a foundation for his opinion that Lake Ridge would have been able to obtain the necessary building permits by June 30, 2006. The district court did not abuse its discretion in admitting Rudiger's testimony.

V.

Lastly, BIR argues that the district court should not have awarded damages to Lake Ridge because Lake Ridge failed to show that it would have been able to obtain the necessary building approvals by June 30, 2006.  Citing the Second Restatement of Contracts and relying on the asserted inadmissibility of

15

Rudiger's testimony, BIR argues that an injured party may not recover damages after an anticipatory breach of contract by the other party if the injured party could not perform its promise. BIR further argues that Rudiger's testimony, even if admissible, "falls far short of establishing" that Lake Ridge could have timely obtained the permits. Petr.'s Br. at 55.

We affirm the district court's award of damages. As noted above, the district court did not err in admitting Rudiger's testimony. Rudiger's testimony demonstrated his knowledge, gained through prior experience, of the steps necessary to obtain the proper permits. Based on his experience, Rudiger testified that Lake Ridge could have obtained the necessary permits by June 30, 2006. BIR failed to present any contrary evidence showing that Lake Ridge could not have timely obtained the permits. Based on the evidence presented at trial, the district court's factual findings were not clear error.

## VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

16